# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA

SAL KAFITI
2605 East 5th Street
Charlotte, North Carolina 28204

              Plaintiff,

        vs.

AKTIEBOLAGET ELECTROLUX, also
known as AB ELECTROLUX, a public
company of Sweden,
S:t Göransgatan 143, SE-105 45 Stockholm,
Sweden

MIKAEL ÖSTMAN, an individual,
C/O AB Electrolux
S:t Göransgatan 143, SE-105 45 Stockholm,
Sweden

ELECTROLUX NORTH AMERICA, INC.,
an Ohio corporation,
10200 David Taylor Drive
Charlotte, North Carolina 28262

ELECTROLUX HOME PRODUCTS,
INC., a Delaware corporation,
C/O the Corporation Trust Company,
Registered Agent
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801

A NOLAN PIKE, an individual
747 Mendenhall Ct.
Fort Mill, South Carolina 29715-7852

MIKE GUTTAS, an individual,
1356 Cilantro Ct.
Fort Mill, South Carolina 29708-8815

ESQ RECRUITING, LLC, a Georgia
limited liability company,
C/O Vanessa Vidal, Registered Agent
1870 The Exchange, Suite 100
Atlanta, Georgia 30339

VANESSA VIDAL, an individual,
1870 The Exchange, Suite 100
Atlanta, Georgia 30339

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO.:    3:21-CV-00029

**PLAINTIFF'S COMPLAINT**

**1. Sex Discrimination – Title VII, 42 U.S.C.
§ 2000e
2. Retaliation – Title VII, 42 U.S.C. § 2000e
3. Discrimination in Business – N.C.G.S.A.
§ 75B-2**

DEMAND FOR JURY TRIAL

Plaintiff's Complaint

| | |
|---|---|
| 1 | XYZ Corporations 1-5, and ) |
| 2 | ) |
| | ) |
| 3 | John/Jane Does 1-5. ) |
| | ) |
| 4 | Defendants. ) |
| 5 | _____ ) |

6

7    Plaintiff, SAL KAFITI ("Kafiti" or "Plaintiff"), complains against Defendants, each of them, and

8    demands a trial by jury on all issues and all causes of action, and hereby alleges the following:

9    **INTRODUCTION[1]**

10    1.    Kafiti, an attorney with twenty years of legal experience, a history of exceptional job

11    performance and impeccable professional credentials, brings this lawsuit to challenge Defendants'

12    discriminatory business actions in denying him a promotion from his former position as interim Vice

13    President, General Counsel, Secretary and Compliance Officer ("General Counsel") for Defendant

14    Electrolux North America, Inc. ("Electrolux North America") to the General Counsel position on a

15    permanent basis because of his sex (male).

16    2.    One of the primary reasons that Kafiti was not awarded the General Counsel position on a

17    permanent basis stems from strategic initiatives created, developed, and propagated by AB Electrolux,

18    which were subsequently internalized and implemented by Electrolux North America.  These initiatives

19    reflected a preference for female job candidates for leadership positions and utilized a female candidate's

20    sex/gender as a distinguishing and beneficial characteristic when making hiring or promotion decisions.

21    Specifically, AB Electrolux publicly expressed its discriminatory preference for female

[1]Some of the facts and circumstances relevant to Plaintiff's claims arose in the context of his employment by Electrolux North America, Inc. as an in-house attorney and his work with various entities, including, but not limited to, Electrolux North America, Inc., AB Electrolux and Electrolux Home Products, Inc.  Accordingly, Defendants have claimed that allegations contained in this Complaint are protected from disclosure by the attorney-client and/or work product privileges.  As well, Defendants have contended that allegations in this Complaint reveal confidential information known to Mr. Kafiti only by virtue of his employment.  Plaintiff does not agree with the Defendants' claims in this regard.  Moreover, to the extent that any of the information set forth herein is determined to be privileged and/or confidential, Plaintiff believes that his disclosure of same is permitted by Rule 1.6(b)(6) of the North Carolina Rules of Professional Conduct, and other authority.  Nevertheless, in an abundance of caution and to avoid any suggestion that he has improperly disclosed information that is privileged and/or confidential, Plaintiff, after consultation with counsel for Defendants, has redacted any portions of this Complaint which arguably reveal information that is privileged and/or confidential on those grounds.  Soon after the filing of this lawsuit, Plaintiff intends to file an unopposed motion for leave allowing him to file an unredacted version of this Complaint under seal.  As well, as of its filing, counsel for Defendants have been, and once again will be, provided with a copy of both the redacted and unredacted versions of this Complaint so that they are fully apprised of the full scope of Plaintiff's factual and legal allegations.

2
Plaintiff's Complaint

leadership/managerial candidates by establishing targets and quotas to substantially increase the percentage of women in leadership/managerial positions by the end of 2020, with the stated intention of drastically boosting "the number of women in core business leadership positions," even if "it is a stretch." [*See* excerpts from Electrolux's 2019 Sustainability Report, pp. 19 and 77, publicly available at https://www.electroluxgroup.com/sustainabilityreports/2019/files/2019/PDF/Electrolux_Sustainability_Report_2019_final.pdf].

3.     To that same end, a management meeting attended by Kafiti was held on March 6, 2020, in part to provide ███████████████████████████████████████████████████████████ managers and officers of Electrolux North America and/or other related entities (some or all of whom report directly or indirectly to AB Electrolux senior management) reported on the ██████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████

4.     In a PowerPoint slide displayed to management at the March 6 presentation, it was identified that ████████████████████████████████████████████████████ The PowerPoint slide also showed ████████████████████████████████████████████████████████████

5.     Having just been passed over for the General Counsel role in favor of Jill Jacobson, a female, who upon her hiring would become a "People Leader" in the Legal Affairs department at Electrolux North America – and thus fulfill the █████████████████████████████████ ██████████████████████████████ highlighted in the slide – Kafiti immediately raised concerns after the March 6 presentation that he was passed over for that promotion on the basis of his sex to his immediate supervisor, Defendant Mikael Östman, Senior Vice President, General Counsel & Secretary for AB Electrolux.

6.     Thereafter, one or more of Defendants retaliated against Kafiti for engaging in protected activity. Their campaign of retaliation against Kafiti included, among other things: (1) inquiring whether Plaintiff would consider pursuing opportunities with Electrolux North America outside the legal

department or within other related Electrolux entities, (2) falsely accusing him of unethical conduct under the North Carolina Rules of Professional Conduct, (3) demanding and/or pressuring Kafiti to resign from his in-house attorney position at Electrolux North America if he insisted on pursuing a charge of sex discrimination or otherwise filing a lawsuit against his employer while employed as in-house counsel, (4) insisting that Kafiti obtain an informal ethics opinion from the North Carolina State Bar as a mandatory precondition to remaining in his current in-house counsel position, even while the Equal Employment Opportunity Commission (EEOC) processed and investigated his charge of sex discrimination under Title VII, (5) threatening Kafiti - and subsequently following through on their threat – that they would seek a formal ethics opinion from the North Carolina State Bar to determine whether Kafiti is violating the North Carolina Rules of Professional Conduct by pursuing a charge of discrimination with the EEOC and/or vindicating his legal rights via litigation, (6) placing Kafiti on an extended involuntary leave of absence from his Senior Associate General Counsel position and pursuing a formal ethics opinion from the North Carolina State Bar, (7) refusing to inform Kafiti's co-workers concerning the true reasons and motivations for their decision to place Kafiti on an involuntary leave of absence, (8) reinstating Kafiti from his involuntary leave of absence only after the North Carolina State Bar rejected Electrolux's request for a formal ethics opinion that Kafiti is somehow violating the Rules of Professional Conduct by pursuing his legal rights to a workplace free from discrimination and retaliation, (9) expressly prohibiting Kafiti from engaging in certain forms of protected activity upon his return to work, and (10) altering the terms, conditions, and privileges of Kafiti's employment after he engaged in protected activity, including via a substantial reduction in his current role/job duties and elimination of future advancement opportunities, thereby resulting in diminished compensation for Kafiti in his current and/or future employment.

## JURISDICTION AND VENUE

7.      One or more of Plaintiff's claims arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. This Court has jurisdiction over this action pursuant to 42 U.S.C. § 2000e5(f), 28 U.S.C. §§ 1331 and 1343(a)(4). The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Kafiti's claims under North Carolina General Statutes Annotated § 75B-2.

8.      Venue is proper in this district pursuant to 42 U.S.C. § 2000e5(f) and 28 U.S.C. § 1391(b)

& (c). Plaintiff's claims arose in the Western District of North Carolina. Plaintiff resides and is employed in the Western District of North Carolina. Many of the acts complained of herein occurred in this District and gave rise to the claims alleged.  One or more of the Defendants regularly conducts business in the Western District of North Carolina. Defendant Electrolux North America is headquartered in Charlotte, North Carolina within the Western District of North Carolina, and at all relevant times, employed Plaintiff to perform work in the Western District of North Carolina. One or more of the unlawful employment practices was committed within the Western District of North Carolina, and/or some or all of the employment records relevant to such unlawful conduct are maintained and administered in this District.

## PARTIES

9.      Plaintiff is a male individual residing in Charlotte, North Carolina. Kafiti is a citizen of North Carolina.  Plaintiff is an "employee," as that term is defined under 42 U.S. Code § 2000e(f).

10.     Defendant Aktiebolaget Electrolux, also known as AB Electrolux or Electrolux AB ("AB Electrolux"), is a public company of Sweden, which is currently headquartered and maintains its principal place of business in Stockholm, Sweden.  AB Electrolux is a "foreign parent company to several distinct legal entities around the world," including Electrolux North America and Electrolux Home Products, Inc. (which also does business within North America as "Electrolux Major Appliances, NA").

11.     Defendant Mikael Östman ("Östman") is an individual whose principal place of residence, business and/or domicile is outside of the United States. At all relevant times, Östman served as Senior Vice President, General Counsel & Secretary for AB Electrolux.  In that capacity, Östman reports to AB Electrolux's President and CEO Jonas Samuelson and has supervisory responsibility for members of the Electrolux North America legal department, including Kafiti and Jill Jacobson, as a result of the business relationship between AB Electrolux and Electrolux North America.  Östman, acting as an employee and officer of AB Electrolux and exercising his supervisory authority over employees of Electrolux North America and Electrolux Home Appliances, participated in the unlawful and discriminatory behavior described herein and had a personal stake in achieving one or more unlawful objectives.

12.     Defendant Electrolux North America is an Ohio corporation. Electrolux North America is

currently headquartered and maintains its principal place of business in Charlotte, North Carolina. Electrolux North America is a subsidiary of and a distinct legal entity from its foreign parent corporation, AB Electrolux.

13.     Defendant Electrolux Home Products, Inc. is a Delaware corporation, which does business within North America as "Electrolux Major Appliances, NA" (collectively referred to as "Electrolux Home Products").  Electrolux Home Products is currently headquartered and maintains its principal place of business in Charlotte, North Carolina.  Electrolux Home Products is a subsidiary of and a distinct legal entity separate and apart from Defendant AB Electrolux. Electrolux Home Products also is a distinct legal entity separate and apart from its parent corporation, Defendant Electrolux North America.

14.     Defendant Mike Guttas ("Guttas") is an individual currently residing in South Carolina. Upon information and belief, Guttas is a citizen of South Carolina.  At all relevant times, Guttas has served in title as Vice President of Human Resources for Electrolux Major Appliances, NA, and he regularly conducts business in North Carolina, including within this District.  In that capacity, Guttas acts with express authority on behalf of – and maintains functional responsibility for all human resources activities within – Electrolux Home Products and Electrolux North America.  As well, Guttas has reporting relationships with human resources executives of AB Electrolux, including Lars Worsoe Petersen, Senior Vice President & Head of Human Resources and Communications for AB Electrolux, and also reports to Defendant A Nolan Pike, the President of Electrolux North America and Chief Executive Officer for Electrolux Home Products.  Guttas participated in the unlawful and discriminatory behavior described herein and had a personal stake in achieving one or more unlawful objectives.

15.     Defendant A Nolan Pike ("Pike") is an individual currently residing in South Carolina. Upon information and belief, Pike is a citizen of South Carolina.  Pike currently serves as President of Electrolux North America and Chief Executive Officer for Electrolux Home Products, and he regularly conducts business in North Carolina, including within this District.  In that capacity, Pike has reporting relationships with officers of AB Electrolux, including President and CEO Jonas Samuelson.  Pike participated in the unlawful and discriminatory behavior described herein and had a personal stake in achieving one or more unlawful objectives.

6

Plaintiff's Complaint

16. Defendant ESQ Recruiting, LLC ("ESQ Recruiting") is a limited liability company that is organized under the laws of Georgia. ESQ Recruiting transacts business within the state of North Carolina, including within the Western District of North Carolina.

17. Defendant Vanessa Vidal ("Vidal") is an individual currently residing in Georgia. Upon information and belief, Vidal is a citizen of Georgia. At all relevant times, Vidal served as President and CEO of ESQ Recruiting, and she regularly conducts business in North Carolina, including within this District. Vidal participated in the unlawful and discriminatory behavior described herein and had a personal stake in achieving one or more unlawful objectives.

18. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants John/Jane Does 1 through 5 and XYZ Corporations 1 through 5, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff will amend this Complaint by inserting the true names and capacities of each such Defendants, with appropriate charging allegations, when they are ascertained. Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as a "John/Jane Doe" or "XYZ Corporation" is responsible in some manner for the injuries suffered by Plaintiff and for damages proximately caused by the conduct of each such Defendant or Defendants as herein alleged.

19. At all relevant times, Electrolux North America is and was Plaintiff's direct, formal employer.

20. AB Electrolux is and was "a distinct legal entity" separate and apart from Electrolux North America and Electrolux Home Products. Indeed, AB Electrolux, Electrolux North America, and Electrolux Home Products have a business relationship whereby administrative and operational functions are sometimes provided by an individual directly employed by Electrolux North America on behalf of AB Electrolux or Electrolux Home Products. For example, while he is directly employed by Electrolux North America, Kafiti regularly provides legal service to and on behalf of a variety of "clients" such as AB Electrolux, Electrolux Home Products, and other related entities. In such cases, the "client" being serviced

███████████████████

21.     Notwithstanding certain demarcations between AB Electrolux, Electrolux North America, and Electrolux Home Products, AB Electrolux nevertheless exerted significant control over Plaintiff, and its relationship with Electrolux North America/Electrolux Home Products, such that AB Electrolux also may also be considered to be Plaintiff's "employer" for purposes of Title VII.  Among other things, AB Electrolux has authority to: (1) hire, fire, promote, and/or discipline Plaintiff; (2) supervise him on a day-to-day basis; (3) assign him work; (4) provide him information/materials used for his work; (5) determine the place, method, and means of his work; and (6) rely upon/make use of shared corporate administrative services, including individuals in the Legal Affairs department who, like Plaintiff, were formally employed by a district corporate entity separate and apart from AB Electrolux.

22.     Thus, AB Electrolux and Electrolux North America is each an "employer" as defined by Title VII, 42 U.S.C. § 2000e(b), and each may be considered to be an "employer" of Plaintiff for purposes of Title VII liability even though they are considered as separate and distinct legal entities.

## ADMINISTRATIVE EXHAUSTION

23.     Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action.

24.     Plaintiff timely filed charges of sex discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") against Defendants AB Electrolux and Electrolux North America, and each of them, for the wrongful acts alleged herein under Title VII, and was issued a right-to-sue letter by the EEOC.

25.     Kafiti commenced this action in a timely manner after receiving his right to sue letter from the EEOC.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS
### Kafiti's Background and Credentials

26.     Kafiti graduated *magna cum laude* from Case Western Reserve University School of Law in 2000, where he was an Associate Editor of the Law Review and a three-year Merit Scholar recipient.

27.     After graduation from law school, Kafiti served as an Associate Attorney with Jones Day,

working initially at its New York City offices from 2000-2004 and then at its Cleveland headquarters from 2004-2008.

28. Kafiti joined Electrolux North America in 2008 to serve as Assistant General Counsel at its then Ohio-based headquarters. Electrolux North America relocated its North American corporate headquarters to Charlotte in 2011, requiring Kafiti to move to North Carolina.

29. For over 12 years, Kafiti has dutifully and faithfully served the Electrolux defendants and continues to do so. In his role with Electrolux North America, Plaintiff regularly performs legal work for other corporation entities, including AB Electrolux and Electrolux Home Products, who are referred to and treated as separate and distinct "clients" who, by virtue of their ███████ business relationship with Electrolux North America, have the ability to avail themselves of Plaintiff's legal services. ███████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████

30. Plaintiff's legal work for and on behalf of Electrolux North America, and other distinct corporate entities, has concentrated mostly on commercial and strategic transactions, as well as regulatory compliance, litigation management involving product liability, class actions, and commercial matters with primary oversight responsibility for mergers and acquisitions throughout North America. Like many in-house attorneys, Kafiti's advisory role with the Electrolux defendants often crosses over into general, non-legal business matters, administrative reporting, and management responsibility.

31. Through hard work, dedication, loyalty, and excellent job performance, Kafiti ascended the corporate ladder at Electrolux North America. In June 2018, Kafiti was promoted to the position of Senior Associate General Counsel & Assistant Secretary for Electrolux North America. Individuals employed by AB Electrolux, including Defendant Östman, participated in and/or ratified Kafiti's promotion.

32. Kafiti consistently received excellent job performance reviews throughout his tenure at Electrolux North America. Along the way, Kafiti was recognized both internally and externally for his exceptional job performance and high character, including being selected as 2019 Corporate Counsel of the Year by the Charlotte Business Journal and Association of Corporate Counsel Charlotte and being

named to the National Business Journal's 100 Legal Influencers List for 2019.

**AB Electrolux Expresses – and Electrolux North America Adopts and Perpetuates -- A Discriminatory Preference Based on Sex and Implements A Corporate-wide Policy Favoring the Placement of Females into Leadership Positions**

33.     On or about August 20, 2019, Defendants Östman and AB Electrolux announced their joint support of initiatives focused on gender diversity in the legal industry to law firms that do business with one or more Electrolux entities and to the broader business community. AB Electrolux specifically stated that it would be focusing on gender diversity in its hiring and purchasing practices, including within and among its own legal teams.

34.     In early October 2019, Electrolux North America announced the resignation of its General Counsel, Sean Simmons, effective as of December 31.

35.     On October 9, 2019, Kafiti was named interim General Counsel & Secretary for Electrolux North America. Kafiti's official start date as interim General Counsel was set for January 6, 2020, but he began the onboarding process for the General Counsel position immediately after the appointment was announced.

36.     As interim General Counsel & Secretary for Electrolux North America, Kafiti reported operationally to the President of Electrolux North America and functionally to Östman, a corporate officer, agent, and employee of Defendant AB Electrolux. At all relevant times, Östman served as Global General Counsel for AB Electrolux and the Electrolux Group.

37.     On or about the same date that Kafiti was named interim General Counsel for Electrolux North America, Defendant AB Electrolux retained Defendants ESQ Recruiting and Vanessa Vidal to identify, solicit, and recruit candidates for the Electrolux North America General Counsel position on a permanent basis.

38.     During 2019 and before the retention of ESQ Recruiting to assist with the General Counsel search, Electrolux North America, in furtherance of AB Electrolux's diversity initiatives, created new Diversity Committees for all of its business areas.

39.     Electrolux North America, in furtherance of AB Electrolux's diversity initiatives, set targets

for gender diversity within its various business areas, including within its legal department, specifically emphasizing the need to increase the share of women in leadership positions by the end of 2020.

40.    Although AB Electrolux "recognize[d] it is a stretch," it set a goal/quota of having at least 35% women in Tier 2 and Tier 3 leadership positions by the end of 2020.  This goal was also applicable to and adopted by Electrolux North America.

41.    Electrolux employees are actively encouraged and rewarded for selecting or hiring females for leadership or managerial positions.

**Both AB Electrolux and Electrolux North America Demand the Inclusion of Female Candidates for the General Counsel Position on the Final Shortlist and -- Unsurprisingly -- Give it to a Female**

42.    Shortly after naming Kafiti to the interim General Counsel position, Electrolux North America posted the job opening for the General Counsel position on its internal computer network/intranet for all Electrolux employees.

43.    The stated requirements for the General Counsel position included: (1) a Juris Doctor degree or equivalent law degree; (2) a minimum of 15 years of relevant legal experience with a prominent law firm and/or an international corporation's legal department, preferably in the manufacturing industry; (3) significant experience in (i) international corporate transactions, (ii) regulatory work, and (iii) complex lawsuits; (4) experience acquired from an international environment, either in a foreign-owned company in North America or in a U.S company abroad; (5) experience negotiating with large big-box retailers; and (6) experience with regulatory agencies.  Notably, prior experience as a general counsel or status as an external candidate were not identified as a job requirement or preferred qualification.

44.    Five "internal" candidates submitted inquiries applying for the General Counsel position. Each of these five internal candidates for the General Counsel position, including Kafiti, were and are male.

45.    At or about the same time as the General Counsel position was posted internally, Guttas provided ESQ Recruiting and Vidal with a virtually identical job description for the General Counsel position.

46.    Consistent with the Electrolux defendants' stated preference for hiring more women into leadership positions and increased focus on gender diversity initiatives, Guttas emphasized to Vidal early

on in the recruitment search efforts on October 19, 2019 that "[w]e would very much like to see diverse and *particularly female candidates* in the process." Guttas also told Vidal that AB Electrolux's Global General Counsel (Östman) and Electrolux North America's President at the time (Alan Shaw) would likely be expressing this strong preference for female candidate(s) as well.

47. Vidal and ESQ Recruiting provided periodic recruitment status reports to both AB Electrolux and Electrolux North America, generally on a weekly basis. The October 25, 2019 status report identified each of the job candidates that Vidal had reviewed by that date and indicated the particular stage of review for each candidate: (i) submitted (i.e., those candidates that Vidal determined met the job requirements, possessed preferred qualifications, and should be considered for the General Counsel position), (ii) currently processing, (iii) contacted/interviewing/waiting for response, or (iv) rejected. According to the October 25 status report, Vidal had considered and reviewed 119 external job candidates by that date, 95 of whom were "rejected" as candidates. The other 24 candidates, five of whom were female, were at varying stages of review.

48. Shortly after receiving Vidal's October 25 status report, Guttas replied to Vidal on October 27 and reiterated his preference for female candidates, stating in no uncertain terms: "Also, as I mentioned previously I would like to have a diverse pool with *at least one female candidate in the final shortlist* of candidates even if that means the search takes a bit longer."

49. Given the demand that at least one female candidate be included on the final shortlist, ESQ Recruiting and Vidal willfully and knowingly included three female candidates on the final shortlist of external candidates for the General Counsel position.

50. ESQ Recruiting and Vidal did not recommend any of the five internal candidates, all of whom were male, to be included on the final shortlist for the General Counsel position.

51. Nevertheless, in January 2020, Electrolux North America's new and recently-named President A Nolan Pike informed Kafiti that he was a finalist for the General Counsel position and invited him to interview for the job on a permanent basis.

52. During his time in the interim general counsel role, Kafiti received feedback from employees of both AB Electrolux and Electrolux North America that he was performing exceptionally well

in that role.

53.     Before Kafiti could even be interviewed by Mr. Pike, Guttas emailed Pike to inform him that Jill Jacobson, a female, was being recommended for selection for the General Counsel position. Among those who participated in this recommendation were Guttas and, upon information and belief, Östman, on behalf of AB Electrolux. Guttas further told Pike that "[a]lthough unlikely that [Kafiti] would be recommended by you over Jill we want to keep [Kafiti's] head in the game" before Jacobson's recruitment is finalized.

54.     Jacobson was offered the General Counsel position in mid-February. She accepted the position shortly thereafter.

55.     One of the factors considered in awarding the General Counsel position to Jacobson was her sex, female.

56.     Corporate officers and managers of AB Electrolux were instrumental in the decision to hire Jacobson for the General Counsel position at Electrolux North America. Several high-level AB Electrolux executives interviewed Jacobson and/or were consulted for approval before Jacobson was hired, including (1) Jonas Samuelson, AB Electrolux's President and CEO, (2) Lars Worsoe Petersen, Senior Vice President & Head of Human Resources and Communications for AB Electrolux, (3) Mikael Östman, and (4) Hilde Jemsby, Human Resources Business Partner and Director Global Finance and Legal Affairs for AB Electrolux. Despite being a finalist for the General Counsel position, Kafiti was not afforded the same opportunities as Jacobson to interview with the high-level executives at AB Electrolux.

57.     Östman and Pike each separately informed Kafiti in late February that he was not being awarded the General Counsel position.

58.     Östman also told Kafiti that Jacobson was selected for the General Counsel position because of her "profile."

59.     Ever since Östman assumed his role as Global General Counsel for AB Electrolux and the Electrolux Group in or about November 2016, the majority of hiring/promotion decisions that Östman has made and/or been involved with have resulted in a female receiving the position.

60.     One of the reasons that Kafiti was passed over for the General Counsel position is because

Plaintiff's Complaint

of his sex.

61.     After the hiring of Jacobson as General Counsel was announced, several of Kafiti's colleagues, including those with legal, compliance, and human resources responsibilities, shared with him their respective beliefs that Kafiti was not promoted to the General Counsel position on a permanent basis because he is not female.

## Kafiti Engages in Protected Activity

62.     Through the Ethics at Electrolux program, employees are encouraged to report suspected unlawful incidents, harassment, or discriminatory behavior to their manager, HR department, Internal Audit or another relevant person in the organization.

63.     A management meeting attended by Kafiti was held on March 6, 2020, in part to provide ███ ████████████████████████████████████████████████████████████ at the March 6 meeting, Guttas, Pike and others discussed ███████████████████████████████████ █████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████

64.     In a PowerPoint slide displayed to management at the March 6 presentation, Electrolux North America and Electrolux Home Products identified that ██████████████████████████ ███████████████████████████████████████████████████████████████████████ The PowerPoint slide also showed ████████████████████████████████████████████████ ██████████████████████████

65.     Upon the hiring of Jill Jacobson for the position of General Counsel of Electrolux North America, which became effective in March 2020, ███████████████████████████████████ ███████████████████████████████████████████████████████████████████ was achieved.

66.     ███████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████

Plaintiff's Complaint

**[REDACTED]**

67.     On or about March 11, 2020, Östman called Kafiti to discuss the March 6 email. Kafiti advised Östman that he had retained counsel with respect to his complaints of discrimination, and in light of his status as a represented individual, advised Östman that communications on the topic should go through counsel.

68.     On or about March 12, 2020, Kafiti's counsel sent a letter to Östman and Guttas advising them, and in turn AB Electrolux and Electrolux North America, of Kafiti's intention to pursue discrimination claims and requesting that they take steps to preserve all relevant evidence.

69.     On or about March 30, 2020, Kafiti filed a charge of sex discrimination with the EEOC.

70.     On or about April 22, 2020, Kafiti responded to written questions posed by outside counsel for the Electrolux defendants concerning his discrimination charge and provided additional information regarding his discrimination complaint. Kafiti also identified documents and witnesses, including several members of Electrolux North America's in-house legal department, to support his discrimination complaint.

71.     Electrolux North America placed Kafiti on an involuntary leave of absence on or about May 12, 2020.

72.     On or about May 27, 2020, Kafiti filed an amended charge of sex discrimination and retaliation with the EEOC.

73.     The Electrolux defendants were aware of each of these instances of protected conduct involving Kafiti.

**The Electrolux Defendants Retaliate Against Kafiti**

74.     On or about March 26, 2020, during Kafiti's first one-on-one interaction with Jacobson while she was onboarding to the General Counsel position and nearly three weeks after Kafiti first raised concerns regarding discriminatory treatment, Jacobson inquired whether Kafiti would consider pursuing opportunities outside of the Legal Affairs department.

75.     Kafiti referenced Jacobson's comments about pursuing outside opportunities that she made

Plaintiff's Complaint

to him during their first one-on-one interaction in the charge of discrimination that he filed with the EEOC on March 30.

76.     Jacobson sent Kafiti an email on or about April 7 expressing frustration that her March 26 comments had been included in his EEOC charge.

77.     AB Electrolux and Electrolux North America also attempted to dissuade Kafiti from pursuing his discrimination complaint with the EEOC and/or any future discrimination lawsuit by accusing him of an ethical conflict of interest if he did not resign his employment with Electrolux North America.

78.     After being threatened with charges of unethical conduct for having engaged in protected activity under Title VII, Kafiti solicited an expert ethics opinion from Mr. F. Lane Williamson, former Chairman of the North Carolina State Bar Ethics and Disciplinary Committee.

79.     Mr. Williamson provided the expert opinion that "there is no ethical restriction or precondition on [Kafiti] maintaining his sex discrimination claim against his employer, so long as he continues to carry out his job responsibilities consistent with his ongoing duty of loyalty."

80.     Mr. Williamson also opined that "Electrolux and its counsel appear to be raising these [ethical] concerns in order to 'gaslight' [Kafiti] and his counsel into believing that he is acting unethically by pursuing his [sex discrimination] claim without first resigning, when in fact he is not."

**AB Electrolux and Electrolux North America Demand Kafiti's Resignation and Subsequently Carry Out Their Threat to Pursue an Ethics Opinion From the North Carolina Bar After Kafiti Refuses to Quit his Job**

81.     On or about April 17, 2020, some six weeks after Kafiti first raised his concerns of unlawful and discriminatory treatment and nearly three weeks after Kafiti filed his EEOC charge, Electrolux North America – through its outside counsel – accused Kafiti of having violated his ethical obligations as an attorney by pursuing discrimination claims against the Electrolux defendants.

82.     In an April 17 letter to Kafiti, Electrolux North America contended that Kafiti must resign his employment if he intended to proceed with his charge of discrimination. Specifically, the letter threatened: "[i]f, notwithstanding the duties owed to Electrolux as its counsel, Kafiti insists upon pursuing claims against Electrolux, we believe that he has an ethical obligation to resign."

Plaintiff's Complaint

83.     If Kafiti refused to resign, the letter further threatened and demanded that he report his conduct to the North Carolina State Bar and obtain an informal ethics opinion about his intended course of action, even though he was merely pursuing and protecting his legal rights to be free from discrimination in the workplace.

84.     In that same letter, Electrolux North America falsely alleged that Kafiti had improperly disclosed confidential information in his charge of discrimination to the EEOC.

85.     On or about April 22, 2020, Kafiti rejected Electrolux's demand that he resign his employment for having engaged in protected activity under Title VII and/or if he wished to continue pursuing his legal rights under Title VII.  Kafiti also refused the retaliatory demand that he contact the North Carolina State Bar to obtain an informal ethics opinion about his ethical obligations as an attorney for having engaged in protected activity under Title VII and/or if he wished to continuing pursuing his legal rights under Title VII in order to remain in his current job at Electrolux North America. Parenthetically, Kafiti's response and intended course of action was consistent with Mr. Williamson's expert ethics opinion that Kafiti had no obligation to resign.

86.     On or about May 11, 2020, AB Electrolux and Electrolux North America advised Kafiti that they intended to contact the North Carolina State Bar for a formal ethics opinion concerning his continued employment at Electrolux North America and pursuit of discrimination charges and/or litigation while employed there. AB Electrolux and Electrolux North America also reiterated their baseless claim that Kafiti had improperly disclosed confidential information in his EEOC charge.

87.     On May 12, 2020, Jacobson and Guttas telephoned Kafiti to inform him that he was being placed on an indefinite paid leave of absence.

88.     While on leave, Kafiti was not permitted to perform any of his customary job duties and was denied access to Electrolux North America's systems and offices.

89.     Jacobson and Guttas also instructed Kafiti that he was not permitted to speak to any employees of AB Electrolux, Electrolux North America, and/or Electrolux Home Products about work matters or his discrimination complaint.

90.     Meanwhile, Kafiti was advised by Guttas and Jacobson that his co-workers and third parties

Plaintiff's Complaint

outside of Electrolux, including members of the legal community, would be told that he had created a conflict of interest by initiating his claims.

91.     Kafiti asked Guttas and Jacobson to also include in their communications with his work colleagues and outside third parties accurate information about the circumstances surrounding his involuntary leave of absence, including that: (1) Kafiti was placed on leave after filing a charge of sex discrimination with the EEOC, and (2) Electrolux's rejection of proposed measures short of a leave of absence (i.e., adjusting Kafiti's workflow to insure that his day-to-day job duties – most of which involved corporate or transactional matters -- did not touch on his discrimination/retaliation complaints) that would have fully addressed any purported conflict of interest.  However, these requests were denied.

### The North Carolina State Bar Declines Electrolux North America's Request for An Ethics Opinion that Kafiti Has Any Conflict of Interest or Engaged in Unethical Conduct by Filing a Title VII Charge Against Them

92.     On or about May 18, 2020, Electrolux North America contacted the North Carolina State Bar requesting a formal ethics opinion as to whether Kafiti's continuation of employment while pursuing employment discrimination claims against them violates ethical standards.

93.     In correspondence accompanying their request for a formal ethics opinion, Electrolux North America made clear that its allegations of unethical conduct were premised solely on Kafiti's protected activity.

94.     On July 21, 2020, the North Carolina State Bar rejected the request from Electrolux North America for a formal ethics opinion that Kafiti had violated any ethical rules by filing and pursuing claims for sex discrimination and retaliation while still employed as in-house counsel.

95.     On August 13, 2020, almost four weeks after the North Carolina State Bar's refusal to issue the formal ethics opinion that the company requested, Electrolux North America "reinstated" Kafiti to full-time employment, ostensibly to the position of Senior Associate General Counsel that he held prior to his service as interim General Counsel.

96.     Since being "reinstated" from the involuntary leave of absence, however, the Electrolux defendants have denied Kafiti certain terms, conditions, and privileges of employment, including but not

Plaintiff's Complaint

limited to: (1) removing him from meaningful job assignments within the Legal Affairs department, (2) assigning Kafiti's job duties to less senior attorneys within the Legal Affairs department, including attorneys Kafiti previously supervised, (3) assigning projects to Kafiti that were previously handled by junior-level attorneys and legal staff, (4) instituting a "reorganization" of the Legal Affairs department that disproportionally and adversely affects his roles and responsibilities, (5) loss of supervisory and management authority within the Legal Affairs department, and (6) eliminating/impairing future advancement opportunities, thereby resulting in diminished compensation in his current and/or future employment.

### FIRST CLAIM FOR RELIEF
#### Sex Discrimination – 42 U.S.C. §2000e
#### (Against Defendants AB Electrolux and Electrolux North America)

97.     Plaintiff incorporates the foregoing paragraphs as though repeated here.

98.     Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 (42 U.S.C. § 2000e), prohibits discrimination in the workplace by an employer on the basis of a person's sex.

99.     Defendants AB Electrolux and Electrolux North America intentionally discriminated against Kafiti on the basis of his sex.

100.     Defendants AB Electrolux and Electrolux North America discriminated against Kafiti on the basis of his sex by denying Kafiti a promotion to the General Counsel position and denying him the same opportunities for advancement and compensation afforded to similarly situated female employees or female job applicants.

101.     Other evidence that Defendants AB Electrolux and Electrolux North America discriminated against Kafiti on the basis of his sex includes: (1) strategic initiatives created and developed by AB Electrolux and subsequently implemented by Electrolux North America to prefer female job candidates for leadership positions, and subsequently utilizing a female candidate's sex/gender as a distinguishing and beneficial characteristic when making hiring or promotion decisions at both related companies, (2) emails from Guttas expressing bias and preference for female candidates for the General Counsel position and indicating that Mr. Östman, among potentially others, harbored the same bias and preference, (3) the Electrolux 2019 Sustainability Report (referenced above), (4) the March 6, 2020 PowerPoint slide

indicating that ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████

102.    AB Electrolux and Electrolux North America's discriminatory actions or practices described herein have denied Kafiti promotional opportunities, assignments and compensation to which he is entitled, which has resulted in the loss of past and future wages, past and future stock compensation, and other job benefits, and has caused Kafiti to suffer humiliation, embarrassment and emotional distress.

103.    This intentional discrimination was actively engaged in by and/or ratified by managing agents of Defendants AB Electrolux and Electrolux North America.

104.    The conduct of Defendants AB Electrolux and Electrolux North America was intentional, malicious, willful, and in complete and conscious disregard for Plaintiff's legal rights, and its effect on him, and thereby justifies the imposition of general, special and punitive damages.

105.    Plaintiff requests relief as provided in the Prayer for Relief below.

## SECOND CLAIM FOR RELIEF
### Retaliation in Violation of Title VII
### (Against Defendants AB Electrolux and Electrolux North America)

106.    Plaintiff incorporates the foregoing paragraphs as though repeated here.

107.    Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 (42 U.S.C. § 2000e), prohibits retaliation against an employee for engaging in protected activity by opposing unlawful discrimination and/or participating in an investigation, hearing or proceeding under that statute.

108.    Kafiti engaged in protected activity by opposing practices on the part of AB Electrolux and Electrolux North America that he reasonably and in good faith believed to be discriminatory and by participating in a subsequent investigation(s) conducted by or on behalf of AB Electrolux and/or Electrolux North America.

Plaintiff's Complaint

109.    Defendants AB Electrolux and Electrolux North America were aware of Kafiti's protected activity.

110.    AB Electrolux and Electrolux North America retaliated against Kafiti for his protected activity by, among other things: (1) suggesting that he seek employment outside the legal department of Electrolux North America, (2) expressing frustration about the contents of Kafiti's March 30, 2020 charge of discrimination, (3) demanding that Kafiti resign his employment if he intended to vindicate his legal rights to be free from unlawful sex discrimination, (4) demanding that Kafiti report his conduct to the North Carolina Bar and seek an ethics opinion in order to continue his employment, (5) alleging that Kafiti had violated his professional ethical obligations and improperly disclosed confidential information, (6) reporting Kafiti to the North Carolina Bar in order to obtain an ethics opinion that he must resign his employment or forego his Title VII rights, (7) placing Kafiti on an involuntary leave pending the outcome of their attempt to obtain an opinion from the North Carolina Bar, (8) formal and informal efforts designed to dissuade Kafiti from further engaging in protected activity, (9) expressly prohibiting Kafiti from engaging in certain forms of protected activity upon his return to work, and, (10) upon his return from involuntary leave, materially altering Kafiti's work responsibilities and duties in the following ways, among others: (i) removal from meaningful job assignments with the Legal Affairs department, (ii) assigning Kafiti's job duties to less senior attorneys within the Legal Affairs department, including attorneys Kafiti previously supervised, (iii) eliminating supervisory and management responsibilities Kafiti had previously been assigned within the Legal Affairs department, (iv) instituting a "reorganization" of the Legal Affairs department that disproportionally and adversely affects his roles and responsibilities, and (v) eliminating/impairing future advancement opportunities, resulting in diminished compensation in his current and/or future employment.

111.    One or more of Defendants AB Electrolux and Electrolux North America discriminated against Kafiti on the basis of his sex by retaliating against him for having engaged in lawful protected activity.

112.    The discriminatory and retaliatory practices of Defendants AB Electrolux and Electrolux North America have resulted in the loss of past and future wages, past and future stock compensation, and

Plaintiff's Complaint

other job benefits, and have caused Kafiti to suffer humiliation, embarrassment and emotional distress.

113.    This retaliation was actively engaged in by and/or ratified by managing agents of Defendants AB Electrolux and Electrolux North America.

114.    The conduct of Defendants AB Electrolux and Electrolux North America was intentional, malicious, willful, and in complete and conscious disregard for Plaintiff's legal rights, and its effect on him, and thereby justifies the imposition of general, special and punitive damages.

115.    Plaintiff requests relief as provided in the Prayer for Relief below.

**THIRD CLAIM FOR RELIEF**
**Discrimination in Business in Violation of N.C.G.S.A. §75B-2**
**(Against All Defendants)**

116.    Plaintiff incorporates the foregoing paragraphs as though repeated here.

117.    North Carolina General Statutes Annotated §75B-2(4) prohibits any person doing business in the State from refusing or failing to promote any other person who is domiciled in North Carolina to any position of employment when such refusal or failure results from an agreement, contract, arrangement, combination, or understanding with any foreign person and is based upon such other person's sex.

118.    N.C.G.S.A §75B-2(5) prohibits any person doing business in the State from willfully and knowingly aiding or abetting any other person to engage in conduct which is prohibited by Chapter 75B.

119.    N.C.G.S.A. §75B-4 provides that a person injured by a violation of G.S. §75B-2 may maintain an action for damages against any person who committed the violation.

120.    Defendants Electrolux North America, Electrolux Home Products, Pike, Guttas, ESQ Recruiting, and Vidal are each "persons," as that term is defined by N.C.G.S.A §75B-1(6), and are each doing "business" in the State of North Carolina, as that term is defined by N.C.G.S.A §75B-1(1).

121.    At all relevant times, Kafiti is and has been a "person," as defined by N.C.G.S.A §75B-1(6), domiciled in North Carolina.

122.    Defendants AB Electrolux and Östman are each a "foreign person," as that term is defined by N.C.G.S.A §75B-1(3), as are each of the other senior-level managers at AB Electrolux domiciled in Sweden, including Samuelson, Petersen, and Jemsby, who (though not named as Defendants) also were personally and directly involved in the decision not to promote Kafiti to the General Counsel position.

123.    Defendants AB Electrolux and Ostman, as well as the other senior-level managers at AB Electrolux domiciled in Sweden, also are "persons" doing "business" in the State of North Carolina, as those terms are defined by N.C.S.A §75B-1(1) and (6).

124.    Defendants Electrolux North America, Electrolux Home Products, Pike, Guttas, ESQ Recruiting, and Vidal each refused or failed to promote Kafiti to the General Counsel position and that refusal/failure to promote Kafiti resulted from an agreement, contract, arrangement, combination, and/or understanding with Defendants Östman and AB Electrolux (as well as other Swedish-based executives within AB Electrolux, including Samuelson, Petersen, and Jemsby, and/or any other persons controlled directly or indirectly by AB Electrolux) and was based upon Kafiti's sex.  As such, given their direct and personal involvement in the decision not to promote Kafiti, each of the Defendants willfully and knowingly committed one or more violations of N.C.G.S.A §75B-2(4).

125.    As set forth herein, each of the Defendants, including but not limited to ESQ Recruiting and Vidal, also willfully and knowingly aided or abetted another person referenced in this Complaint to engage in conduct prohibited by Chapter §75B.  As such, given their direct and personal involvement in such unlawful conduct, each Defendant also willingly and knowingly committed one or more violations of N.C.G.S.A §75B-2(5).

126.    Kafiti has been injured by the violations of N.C.G.S.A §75B-2 set forth herein.

127.    Some or all of the people who are affiliated with or who had a contractual relationship with AB Electrolux on the one hand, and some or all of the people who are affiliated with or who had a contractual relationship with Electrolux North America on the other hand, also had an independent personal, financial, or reputational stake in achieving the gender diversity targets/quotas referenced herein and, as a result, are in part or largely responsible for not promoting Kafiti to the General Counsel position on a permanent basis based on his sex.

128.    Gender diversity is "an issue" that is "close to the heart" of Östman, and by extension, it is a critically important consideration for AB Electrolux as well. Gender diversity is trumpeted so much by AB Electrolux that – near the time of the "selection process" that resulted in Jacobson's hiring as General Counsel for Electrolux North America was underway – Ostman used his platform as Global General

Plaintiff's Complaint

Counsel for AB Electrolux in Sweden to pressure persons within the United States and doing business in North Carolina to "improve … gender diversity" and "track[] the improvements" or risk losing future opportunities to do business with Östman, AB Electrolux, and the companies affiliated with them.

129.     Executives employed by AB Electrolux, Electrolux North America, and Electrolux Home Products are evaluated, recognized, and rewarded based upon their ability to achieve gender diversity goals and, as a result, act out of a personal, self-interested motivation when making hiring and promotion decisions based upon sex.

130.     AB Electrolux, Electrolux North America, and Electrolux Home Products implemented internal initiatives in 2019 and 2020 that focus on and promote the hiring, advancement, and promotion of females within these corporate entities, including within the legal function. These initiatives included written performance objectives that reward managers on an individualized basis for placing females in managerial or supervisory jobs and achieving gender diversity targets established by the Electrolux defendants.

131.     The discriminatory business practices of Defendants, and each of them, have resulted in the loss of past and future wages, past and future stock compensation, and other job benefits, and have caused Kafiti to suffer humiliation, embarrassment and emotional distress.

132.     This discrimination in business was actively engaged in by and/or ratified by managing agents of Defendants, and each of them.

133.     The conduct of each Defendant was intentional, malicious, willful, and in complete and conscious disregard for Plaintiff's legal rights, and its effect on him, and thereby justifies the imposition of general, special and punitive damages.

134.     By committing the actions described herein, each of the Defendants willfully violated North Carolina General Statutes Annotated § 75B-2, and consequently, Kafiti requests three times the amount of his actual damages which resulted from the violation(s) of this Chapter 75B, with costs and reasonable attorneys' fees, as provided by North Carolina General Statutes Annotated § 75B-4.

135.     Plaintiff requests relief as provided in the Prayer for Relief below.

Plaintiff's Complaint

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff SAL KAFITI prays for relief as follows:

(1)     all damages that Kafiti has sustained as a result of Defendants' conduct, including back pay, front pay, general and specific damages for lost compensation and job benefits he would have received but for the discriminatory practices of one or more Defendants, damages for emotional distress, and punitive damages, according to proof;

(2)     exemplary and punitive damages in an amount commensurate with each Defendant's ability to pay and to deter future conduct;

(3)     a preliminary and permanent injunction against each Defendant and its directors, officers, owners, agents, successors, employees and representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs and usages set forth herein;

(4)     a declaratory judgment that the practices complained of in this complaint are unlawful and violate 42 U.S.C. § 2000(e), et. seq., Title VII of the Civil Rights Act of 1964;

(5)     an order assigning Plaintiff to the job he would now be occupying but for one or more of Defendant's discriminatory practices;

(6)     an adjustment of the wage rates and benefits for Kafiti to that level which he would be enjoying but for one or more of Defendant's discriminatory practices;

(7)     costs incurred, including reasonable attorneys' fees, to the extent allowable by law;

(8)     pre-judgment and post-judgment interest, as provided by law;

(9)     any and all legal and equitable relief available under North Carolina General Statutes Chapter 75B, including but not limited to three times the amount of Kafiti's actual damages for each violation of Chapter 75B; and,

(10)    such other and further legal and equitable relief as this Court deems necessary, just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, SAL KAFITI, hereby demands a trial by jury.


Respectfully submitted,


/s/ Tamara Huckert
Tamara Huckert (NC Bar No. 35348)
Chris Strianese (NC Bar No. 49618)
STRIANESE HUCKERT, LLP
3501 Monroe Rd.
Charlotte, NC 28205
T: 704-966-2101
E: chris@strilaw.com
E: tamara@strilaw.com

/s/ Shannon J. Polk
Shannon J. Polk (OH Reg. 0072891)[2]
Andrew A. Kabat (OH Reg. 0063720)
Daniel M. Connell (OH Reg. 0078418)
Mark F. Humenik (OH Reg. 0065636; CA Reg. 231917)
POLK KABAT, LLP
1300 W. 78th Street, Suite 305
Cleveland, OH 44102
T: 216-241-0700
F: 216-241-0739
E: spolk@polkkabat.com
E: akabat@polkkabat.com
E: dconnell@polkkabat.com
E: mhumenik@polkkabat.com

Attorneys for Plaintiff, Sal Kafiti

---

[2]Each of the attorneys at Polk Kabat, LLP will soon be applying for *pro hac vice* admission to appear in this case on Plaintiff's behalf.